Christine Brito, Esq. (CA Bar. No.316536)
Law Office of Christine Brito
3419 E. Chapman Ave. #355
Orange, CA 92869
(714)912-5026
Christineb@britoesq.com
*Attorney for Petitioner*
Francisco Javier Rodriguez Sanabia

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| Francisco Javier Rodriguez Sanabia,<br><br>Plaintiff,<br><br>v.<br><br>JOSHUA JOHNSON, Warden of the Adelanto Detention Center, JAIME RIOS, Acting ICE Field Office Director U.S. Immigration and Customs Enforcement, DAVID VENTURELLA, Acting Director of U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of the U.S. Department Of Homeland Security; and TODD BLANCHE, Attorney General of the United States, in their official capacities<br><br>Defendant. | **Case No. 2:26-cv-9682**<br><br>**PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## INTRODUCTION & STATEMENT OF FACTS

1. Petitioner, "Francisco Javier Rodriguez Sanabia," by and through his undersigned counsel hereby files this petition for writ of habeas corpus and complaint for declaratory and injunctive relief to compel his immediate release from the immigration detention center where he has been held by the U.S. Department of Homeland Security (DHS) from on or about April 23, 2026, without first being provided a pre-deprivation hearing to determine whether his incarceration is justified.

2. **On August 30, 2026, herein Counsel has been informed of Petitioner's imminent deportation. Petitioner was recently transported by ICE by bus to be deported, but was returned to Adelanto ICE Processing Center on August 29, 2026 "because the deportation flight to Mexico was full."**

3. Petitioner is Mexican national with various DHS apprehensions and prior removals. He first entered the United States on or about February 1999 without being admitted or paroled. He had an apprehension at the border at or near Douglas, Arizona. Petitioner voluntarily departed due to his father's death about one month later. Petitioner re-entered the U.S. without inspection. He subsequently departed voluntarily in 2002. That same year, he was apprehended and returned to Mexico approximately two to three times while trying to re-enter the United States. Petitioner re-entered the United States on March 25, 2022, without inspection. In 2013, he was apprehended by ICE and charged with removability under Section 212 and 237 of INA. An immigration judge ordered his removal on April 15, 2014. Lastly, in June 2016, Petitioner again voluntarily returned to Mexico. Petitioner's last entry into the United States occurred on March 25, 2022 at or near Tecate, California without inspection. In sum, Petitioner is subject to a final order of removal which can be executed at any time.

4. On March 22, 2025, Petitioner was a victim of felonious assault in Oakland, California outside a restaurant parking lot while dining with his immediate family. Petitioner "exited the vehicle and while still in the parking lot, an assailant struck him twice in the head with a firearm, snatching the chain he was wearing around his neck and leaving him dazed on the ground. As the assailant fled toward a waiting vehicle, he fired the gun in an apparently to intimidate Petitioner and his family." Oakland Police Department investigated the criminal activity under California Penal Code Section 245(a)(2), Assault with a Firearm, Penal Code Section 211, Robbery, and Penal Code Section 246.3, Firing a Gun in Reckless Manner.

5. On April 30, 2026, Petitioner applied for a U Nonimmigrant Visa (U-Visa), including inadmissibility waivers. Petitioner also provided biometrics for USCIS pursuant o his pending U-Visa application on June 3, 2026. Given Petitioner's procedural posture, Petitioner may also file a

Motion to Reopen in Immigration Court with his pending collateral relief to rescind the removal order.

6. On August 24, 2026, Petitioner was arrested and detained by ICE officials while driving to work in Hesperia, California as a landscaper. He was "boxed in" by unmarked vehicles while driving in a public street. Petitioner was not shown any signed judicial arrest warrant at the time of his unlawful arrest. He was, however, asked to confirm his legal name at the time of arrest. Petitioner did not resist arrest.

**7. Petitioner is a class member Immigration Center for Women and Children (ICWC) v. NOEM, Case No. 2:25-cv-09848-AB-AS, 2026 WL 1455004 (C.D. Cal. May 20, 2026) (hereinafter "*ICWC v. Noem*").** He has standing as a class member, because he has a pending U-Visa with USCIS. On May 20, 2026, the court in *ICWC v. Noem* issued an order temporarily restoring protections for certain immigrant survivors with pending petitions. The order addressed the 2025 Guidance issued by then-Acting ICE Director Caleb Vitello and two related Trump administration policies resulting in the routine arrest, detention, and removal of immigrants with pending VAWA, U visa, and T visa petitions (collectively "2025 Guidance"). By staying the 2025 Guidance, the order reinstates the 2021 and 2011 policy guidance that generally protected against the detention and deportation of individuals with pending VAWA, U visa, and T visa petitions

**8. Petitioner has been prevented from seeking any protection from detention and deportation as a class member of (ICWC) v. NOEM, because ICE officials have failed to abide by the court order upon detaining him given knowledge of pending U-Visa application with USCIS.**

9. Additionally, Petitioner has many positive equities. Petitioner has no criminal convictions aside for the federal prosecution for re-entry into the United States. Petitioner has lived in the United States between 1999 until 2026 (27 years), not including the brief departures. Petitioner is married to a U.S. Citizen named Bertha Alicia Campos Lopez. He is the father of three U.S. Citizen children and stepfather to two U.S. Citizen Children, included one 15-year-old daughter, who suffers from severe autism and is non-verbal and engages in self-harm. Petitioner

is the primary provider for his wife and children, including his stepdaughter with special needs. Petitioner's wife is unable to work due to the severity of their daughter's autism and has been approved by the State of California to work as her sole caretaker.

10. The Department of Homeland Security has taken active steps to immediately remove him on August 29, 2026, including transferring him by bus to be deported to Mexico.

11. Accordingly, to vindicate Petitioner's constitutional rights, this Court should grant the instant petition for a writ of habeas corpus. Petitioner requests the relief of immediate release.

## JURISDICTION

12. The Court has subject matter jurisdiction pursuant to 28 U.S.C.§ 1331 (federal question), 28 U.S.C. § 1651 (All Writs Act), 28 U.S.C. §§ 2201–02 (Declaratory Judgment Act), 28 U.S.C. § 2241 (habeas corpus), Article I, § 9, cl. 2 of the U.S. Constitution (the Suspension Clause), the Fourth and Fifth Amendments to the U.S. Constitution, and 5 U.S.C. §§ 701-706 (Administrative Procedure Act).

## VENUE

13. Venue is proper in this district and division pursuant to 28 U.S.C. § 2241(a) and 28 U.S.C. § 1391(b)(2) and (e)(1) because Petitioner is physically detained within this district. *See Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 78, 484, 493- 500 (1973). Venue is also properly in this Court pursuant to 28 U.S.C. § 1391(e) because Respondents are employees, officers, and agencies of the United States, and because a substantial part of the events or omissions giving rise to the claims occurred in the Central District of California.

## REQUIREMENTS OF 28 U.S.C. § 2243

14. The Court must grant this petition for writ of habeas corpus or order Respondents to show cause "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Respondents must file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* Habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963). "The application for the writ usurps the attention and displaces the calendar of the judge

or justice who entertains and receives prompt action from him within the four corners of the application." *Yong v. I.N.S.*, 20 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

**PARTIES**

15. Petitioner, FRANCISCO JAVIER RODRIGUEZ SANABIA, has been detained at the Adelanto ICE Processing Center since August 24, 2026. He was assigned Alien Registration Number A205-157-155. He has a pending U-Visa before USCIS. He remains detained at Adelanto ICE Processing Center in Adelanto, California. He is in custody, and under the direct control of Respondents and their agents.

16. Respondent JOSHUA JOHNSON is the Warden of the Adelanto Detention Facility, and he has immediate physical custody of Petitioner pursuant to the facility's contract with U.S. Immigration and Customs Enforcement. He has immediate physical custody of Petitioner and is sued in his official capacity.

17. Respondent JAIME RIOS is the Current ICE Field Office Director (FOD), U.S. Immigration and Customs Enforcement. He is the custodian of all persons held at ICE facilities within the Los Angeles Field Office. He is Petitioner's immediate custodian, and is sued in his official capacity.

18. Respondent DAVID VENTURELLA is the Current Director, U.S. Immigration and Customs Enforcement (ICE) and is named in his official capacity. Among other things, ICE is responsible for the administration and enforcement of the immigration laws, including the removal of noncitizens. In his official capacity as head of ICE, Respondent Venturella is the legal custodian of Petitioner.

19. Respondent MARKWAYNE MULLIN is the United States Secretary of Homeland Security and is named in his official capacity. DHS is the federal agency encompassing ICE, which is responsible for the administration and enforcement of the INA and all other laws relating to the immigration of noncitizens. In his capacity as Secretary, Respondent MULLIN has responsibility for the administration and enforcement of the immigration and naturalization laws pursuant to section 402 of the Homeland Security Act of 2002, 107 Pub. L. No. 296, 116 Stat.

2135 (Nov. 25, 2002); see also 8 U.S.C. § 1103(a). Respondent MULLIN is the ultimate legal custodian of Petitioner.

20. Respondent TODD BLANCHE is the Attorney General of the United States and the most senior official in the U.S. Department of Justice (DOJ) and is named in his official capacity. He has the authority to interpret the immigration laws and adjudicate removal cases. The Attorney General delegates this responsibility to the Executive Office for Immigration Review (EOIR), which administers the immigration courts and the BIA.

## VENUE

21. Venue is proper in the Central District of California under 28 U.S.C. § 1391 and the immediate-custodian rule of *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). Petitioner is detained at the Adelanto ICE Processing Center in Adelanto, California, which lies within this District.

## JURISDICTION

22. This action arises under the Constitution of the United States and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq*.

23. A district court may grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) (citing *Singh v. Holder*, 638 F.3d 1196, 1211–12 (9th Cir. 2011)). Pertinent here, the Supreme Court specifically directed that federal courts have jurisdiction to review a constitutional challenge to a non-citizen's detention. *See Demore v. Kim*, 538 U.S. 510, 517(2003); 28 U.S.C. § 2241 *et. seq*., the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and the All Writs Act, 28 U.S.C. § 1651.

## REQUIREMENTS OF 28 U.S.C. § 2243

24. The Court must grant the petition for writ of habeas corpus or issue an order to show cause (OSC) to Respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an OSC is issued, the Court must require Respondents to file a return "within three days

unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* (emphasis added).

25. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added).

26. Habeas corpus must remain a swift remedy. Importantly, "the statute itself directs courts to give petitions for habeas corpus 'special, preferential consideration to ensure expeditious hearing and determination.'" *Yong v. INS*, 208 F.3d 1116, 1120 (9th Cir. 2000) (internal citations omitted). The Ninth Circuit warned against any action creating the perception "that courts are more concerned with efficient trial management than with the vindication of constitutional rights." *Id.*

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

27. For habeas claims, exhaustion of administrative remedies is prudential, not jurisdictional. *Hernandez*, 872 F.3d at 988. A court may waive the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Id.* (*quoting Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (citation and quotation marks omitted)). Petitioner asserts that exhaustion should be waived because administrative remedies are (1) futile and (2) his continued detention results in irreparable harm.

28. Petitioner is subject to mandatory detention, because of a prior order of removal. Thus, it would be futile for Petitioner to seek a bond hearing from an Immigration Judge, because he is not eligible to seek bond. Even if he did not have a prior order of removal, his request would also be summarily denied based on the current interpretation of the BIA's recent decisions in *Maldonado Bautista v. Santacruz* Class action. *See* No. D.C. 5:25-cv-01873-SSS-BFM (9th Cir.

2026); *Matter of Q. Li*, 29 I&N Dec. 66 (B.I.A. 2025) and continued adherence to *Matter of YAJURE HURTADO*, 29 I&N Dec. 216 (BIA 2025).

29. Further, no statutory exhaustion requirements apply to claim of unlawful custody in violation of his due process rights, and there are no administrative remedies that he needs to exhaust. *Reno v Amer.-Arab Anti-Discrim. Comm.*, 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999) (finding exhaustion to be a "futile exercise because the agency does not have jurisdiction to review" constitutional claims); *In re Indefinite Det. Cases*, 82 F. Supp. 2d 1098, 1099 (C.D. Cal. 2000) (same).

## LEGAL FRAMEWORK

***Statutory Framework and Due Process***

30. Petitioner's final order of removal triggers mandatory detention under INA § 241(a) for a 90-day "removal period," during which ICE must remove the noncitizen. Detention is generally mandatory, though release may be possible after 180 days if removal is not likely in the foreseeable future

31. All individuals within the United States have constitutional rights. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Here, Petitioner's Due Process rights have been violated.

***Protected Liberty Interest in Warrantless Arrest***

32. The relevant statute in Petitioner's warrantless arrest claim falls under 8 U.S.C. §1357(a)(2), § 1226 of the INA—the relevant detention provision for the instant case—provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). However, per 8 C.F.R. § 236.1(b)(1), a noncitizen **may only** be arrested and detained pursuant to the Form I-200 Administrative Warrant, if it is issued by an authorized official:

> At the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I–200, Warrant of Arrest. A warrant of arrest may be issued only by those immigration officers listed in § 287.5(e)(2) of this chapter and may be served only by those immigration officers listed in § 287.5(e)(3) of this chapter.

8 C.F.R. § 236.1(b)(1).

33. Immigration officers are authorized to make warrantless arrests in limited circumstances. These include when a noncitizen is "entering or attempting to enter the United States in violation of any law or regulation … regulating the admission, exclusion, expulsion, or removal of aliens," or when an officer has reason to believe (i) the noncitizen is in the United States in violation of such laws or regulations and (ii) the noncitizen is likely to "escape" before an arrest warrant can be obtained. 8 U.S.C. § 1357(a)(2); *see also* 8 U.S.C. §§ 1357(a)(4) – (5) (providing other circumstances that justify warrantless arrest).

34. Here, Petitioner's arrest was unlawful, because it was executed without a warrant, and no exceptions under §1357(a)(2) applied. Given such facts, Respondents failed to follow the procedures authorizing detention under § 1226(a), Petitioner's current detention is "divorced from a finding of probable cause," and release is warranted. *Romero-Perez v. Blanche*, No. 2:26-CV-01708-RFB-BNW, 2026 WL 1724752, at *3 (D. Nev. June 15, 2026).

35. This Court has also granted immediate release as required by law to other petitioners in Petitioner's position repeatedly and recently, on facts materially indistinguishable from these. *Juarez Barrientos v. Moss*, 1:26-cv-05943-NW, 2026 WL 2283034, at *2 (E.D. Cal. Aug. 7, 2026);*Moreno Cristin v. Armant*, No. 5:26-cv-04024-DTB (C.D. Cal. Jul. 29, 2026), Dkt # 10; *Urias v. Semaia,* No. 5:26-CV-02753-DTB, 2026 WL 1710375, at *6 (C.D. Cal. June 10, 2026); *Galvez Pantoja v. DHS,* No. 5:26-CV-02084-JDE, 2026 WL 1601897, at *4 (C.D. Cal. June 1, 2026); *Navarro Gomez v. Wofford,* No. 1:26-CV-05299 (VC), 2026 WL 2065708, at *3 (E.D. Cal. July 16, 2026); *Gregorio v. Larose*, No. 3:26-CV-03918-RBM-SBC, 2026 WL 2059095, at *1 (S.D. Cal. July 16, 2026)*Ahmed M. v. Bondi*, No. 25-CV-4711 (ECT/SGE), 2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026); *Lopez-Sanchez v. Blanche,* No. 8:26CV264, 2026 WL 1759557, at *3 (D. Neb. June 18, 2026); *Chiliquinga Yumbillo v. Stamper*, No. 2:25-cv-00479-SDN, 2025

WL 2783642, at *5 (D. Me. Sept. 30, 2025); *J.A.C.P. v. Wofford*, No. 1:25-cv-01354-KES-SKO (HC), 2025 WL 3013328, at *8 (E.D. Cal. Oct. 27, 2025).

***Creation Of The U Visa by Congress***

36. In 1994, Congress passed the Violence against Women Act ("VAWA") to address the widespread problem of noncitizens remaining in relationships with abusers who held the key to their eligibility for lawful immigration status in the United States. *See* Violent Crime Control and Law Enforcement Act of 1994, Title IV, Pub. L. 103-322, 108 Stat. 1796 (September 13, 1994). "[T]he goal of the bill is to 'permit[ ] battered immigrant women to leave their batterers without fearing deportation.'" *Hernandez v. Ashcroft*, 345 F.3d 824, 841 (9th Cir. 2003) (quoting H.R. Rep. No. 103–395, at 25).

37. In 2000, with overwhelming bipartisan support, Congress passed the Victims of Trafficking and Violence Protection Act of 2000 ("VTVPA"), which reauthorized VAWA through the Violence Against Women Act of 2000 ("VAWA 2000"). The VTVPA dramatically expanded protections for immigrant survivors.

38. Through Title 5 of VAWA 2000 – the Battered Immigrant Women Protection Act of 2000 ("BIWPA") – Congress created the U visa, providing a pathway to U.S. citizenship to noncitizen survivors of qualifying crimes who assist law enforcement in investigating or prosecuting those crimes. *See* BIWPA § 1513(a)(2)(B), (b); 8 U.S.C. § 1101(a)(15)(U).

39. A noncitizen is eligible for a U visa if (1) the petitioner "suffered substantial physical or mental abuse as a result of having been a victim of" certain explicitly identified types of crime; (2) the petitioner "possesses information concerning [the] criminal activity"; (3) the petitioner "has been helpful, is being helpful or is likely to be helpful" to government officials regarding the criminal activity: and (4) the crime occurred in the United States or violated U.S. law. 8 U.S.C. § 1101(a)(15)(U)(i)(I-IV). Children, spouses, and, for petitioners younger than 21, siblings and parents, may also receive U visas as derivative beneficiaries of the primary petitioner. 8 C.F.R. §

214.14(a)(10).

40. Among Congress's stated purposes in creating the U visa were (1) "to strengthen the ability of law enforcement agencies to detect, investigate, and prosecute cases of domestic violence, sexual assault, trafficking of aliens, and other crimes. . . committed against [noncitizens], while offering protection to victims of such offenses in keeping with the humanitarian interests of the United States," and (2) to "facilitate the reporting of crimes to law enforcement officials by trafficked, exploited, victimized, and abused [noncitizens] who are not in lawful immigration status." BIWPA § 1513(a)(2).

41. As DHS has acknowledged, Congress—

> created the U [visa] program out of recognition that victims without legal status may otherwise be reluctant to help in the investigation or prosecution of criminal activity. Immigrants, especially women and children, can be particularly vulnerable to criminal activity like human trafficking, domestic violence, sexual assault, stalking, and other crimes due to a variety of factors, including but not limited to: language barriers, separation from family and friends, lack of understanding U.S. laws, fear of deportation, and cultural differences.[1]

Congress went further than simply creating the U visa. Congress additionally authorized DHS to waive virtually *any* ground of inadmissibility to U visa petitioners. *Id.* § 1513(e); 8 U.S.C. § 1182(d)(14).

42. In 2008, Congress passed the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"). Pub. L. No. 110-457, 122 Stat. 5044. The TVPRA added § 237(d) to the Immigration and Nationality Act ("INA"), which authorizes DHS to issue a stay of any removal order against a U or T visa petitioner if the petition "sets forth a prima facie

---

[1] DHS, *U and T Visa Law Enforcement Resource Guide for Federal, State, Local, Tribal and Territorial Law Enforcement, Prosecutors, Judges, and Other Government Agencies*, at 4, available at https://niwaplibrary.wcl.american.edu/wp-content/uploads/DHS-U-and-T-Visa-Law-Enforcement-Resource-Guide-11.30.15.pdf (last checked [07/03/2026]).

case for approval." 8 U.S.C. § 1227(d)(1). Any such stay remains in effect until the U or T visa is approved or denied, during which time the applicant "shall not be removed." 8 U.S.C. §§ 1227(d)(1)-(3).

43. Moreover, the TVPRA authorized employment for U visa petitioners who had "a pending, bona fide application" awaiting full adjudication. TVPRA § 201(c) (codified at 8 U.S.C. § 1184(p)(6)).

***Until 2025, Decades Of Agency Policy Guidance Presumptively Protected U Visa Petitioners From Immigration Enforcement***

44. Consistent with Congress's intent to encourage noncitizen victims to report crime, for nearly two decades, DHS policies have generally required ICE to refrain from pursuing removal efforts against people with pending U visa petitions, like petitioner, absent serious public safety concerns.[2] These include written policies issued in 2011 and 2021. *See* John Morton, ICE Policy Statement 10076.1, *Prosecutorial Discretion: Certain Victims, Witnesses, and Plaintiffs* (Jun. 17, 2011) ("2011 Policy"), available at https://www.ice.gov/doclib/foia/prosecutorial-discretion/certain-victims-witnesses-plaintiffs.pdf (last checked [July 5, 2026]), and ICE Directive 11005.3, *Using a Victim-Centered Approach with Noncitizen Crime Victims* (Dec. 2, 2021) ( "2021 Directive"), available at

---

[2] *See* Memorandum from William J. Howard, Principal Legal Advisor, to All OPLA Chief Counsel, *Prosecutorial Discretion* (Oct. 24, 2005), available at https://www.aila.org/library/ice-prosecutorial-discretion-memo; Memorandum from William Howard, Principal Legal Advisor, to All OPLA Chief Counsel, *VAWA 2005 Amendments to the Immigration and Nationality Act and 8 U.S.C. § 1367* (Feb. 1, 2007), available at https://www.ice.gov/doclib/foia/policy/memoVAWA_2005_INA_Amendments_02.01.2007.pdf; Memorandum of David J. Venturella, Acting Director, Detention and Removal Operations, to Field Office Directors, *Guidance: Adjudicating Stay Requests Filed by U Nonimmigrant Status (U-visa) Applicants*, (Sept. 24, 2009), available at https://www.ice.gov/doclib/foia/dro_policy_memos/11005_1-hd-stay_requests_filed_by_u_visa_applicants.pdf; Memorandum from Peter S. Vincent, Principal Legal Advisor, to OPLA Attorneys, *Guidance Regarding U Nonimmigrant Status (U visa) Applicants in Removal Proceedings or with Final Orders of Deportation or Removal* (Sept. 25, 2009), available at https://www.ice.gov/doclib/foia/dro_policy_memos/vincent_memo.pdf; ICE Directive 11005.2, *Stay of Removal Requests and Removal Proceedings Involving U Nonimmigrant Status (U Visa) Petitioners*, (Aug. 2. 2019), available at https://www.ice.gov/doclib/foia/policy/11005.2_StayRemovalReqRemProcUVisaPetitioners.pdf.

https://www.ice.gov/doclib/foia/policy/11005.3_UsingVictimCenteredApproachNoncitizenVictims.pdf (last checked [July 5, 2026]).

45. As with prior DHS policy, the 2011 Policy reiterated that "[a]bsent special circumstances or aggravating factors," it is generally "against ICE policy to initiate removal proceedings against" known victims of crime. 2011 Policy at 1. Notably, the 2011 Policy explains "that a flag now exists in" DHS systems "to identify those victims of domestic violence, trafficking, or other crimes who already have filed for . . .victim-based immigration relief." 2011 Policy at 3.

46. The 2021 Directive continued ICE's longstanding policy to "refrain from taking civil enforcement action against" individuals "known to have a pending application" for "victim-based immigration benefits," "absent exceptional circumstances" such as national security or public safety concerns. 2021 Directive at 1-2, 9. If such an application was pending, ICE was to "defer" enforcement until USCIS adjudicates the petition or issues a negative interim adjudication. *Id.* at 2. Agents were to request expedited prima facie adjudications from USCIS for people in ICE custody, and eligibility "for victim-based immigration benefits . . . must be considered" a "positive discretionary factor." *Id.* at 2, 9.

47. On January 30, 2025, ICE issued a policy directive that, for the first time in the agency's history, authorized the routine detention and removal of noncitizen victims of crime who had petitioned for victim-based immigration benefits, such as the U visa. *See* ICE Policy Number 11005.4, *Interim Guidance on Civil Immigration Enforcement Actions Involving Current or Potential Beneficiaries of Victim-Based Immigration Benefits* (Jan. 30, 2025) ("2025 Guidance"), available at https://www.ice.gov/doclib/foia/policy/11005.4.pdf (last checked [July 5, 2026]).

48. The 2025 Guidance became "effective immediately and remains in effect until superseded." 2025 Guidance at 1. It explicitly "rescinded and superseded" the 2021 Directive and 2011 Policy, thereby reneging the government's promise to protect noncitizen crime victims and greenlighting a deportation campaign that ignores their potential eligibility for relief.

49. Specifically, the 2025 Guidance requires, when ICE officers seek to detain or remove individuals with pending U visa petitions, that they (1) merely "coordinate and deconflict internally" and with law enforcement agencies "to ensure criminal investigative and other enforcement actions will not be compromised," (2) "consult with" local ICE attorneys only "to ensure any such action is consistent with applicable legal limitations," (3) need not consider a noncitizen being "a victim of a crime" as "a positive discretionary factor," and (4) will not "routinely request expedited adjudications from USCIS," but may do so only when "it is in ICE's best interests." 2025 Guidance at 2-3.

50. The 2025 Guidance marked an abrupt about-face from longstanding DHS practices, under which immigration agencies generally refrained from enforcement against crime victims absent serious adverse factors.

51. As a result of the 2025 Guidance, ICE now engages in an unlawful policy and practice under which it routinely detains and deports people who have valid grants of deferred action from USCIS in connection with pending U or T visa petitions.[3] Neither Respondent ICE nor USCIS provides any notice or opportunity to be heard regarding whether such deferred action should be revoked prior to doing so. This policy, referred to herein and in *ICWC* as the De Facto Revocation Policy, unlawfully renders deferred action status meaningless.

***Petitioner is a Class Member In <u>ICWC V. NOEM</u> Class Action***

52. On October 14, 2025, several individual plaintiffs and non-profit legal organizations serving immigrant survivors filed a class action complaint in *ICWC*, challenging the lawfulness of the 2025 Guidance and, as relevant here, the De Facto Revocation Policy. *See* Compl. ¶¶ 200-233 *Immigr. Ctr. for Women & Child. v. Noem, et al.*, No. 2:25-cv-09848-AB-AS (C.D. Cal. Oct. 14, 2025) [Dkt. 1].

53. On May 20, 2026, the U.S. District Court for the Central District of California granted plaintiffs' Motion for Class Certification and granted in part plaintiffs' Motion for APA § 705 Relief and Individual and Classwide Preliminary Injunction. *ICWC* PI Order.

---

[3] A T visa petition is a separate survivor-based immigration benefit program, for survivors of severe forms of human trafficking.

54. As part of its ruling, the court provisionally certified three classes, including, as relevant here, the "**Pending Petition Class.**" This class applies to All individuals with pending principal or derivative U visa petitions, T visa petitions or VAWA self-petitions who ICE detains or seeks to detain for civil immigration enforcement. *Id.* at 95-96 ("Pursuant to 5 U.S.C. § 705, the Court hereby **STAYS** the 2025 Guidance, including its rescission of prior policies. This stay applies in favor of All Individual Plaintiffs, the current and future clients of the Organizational Plaintiffs, and the members of all three Classes..").

55. Specifically, the court concluded that plaintiffs were likely to prevail on the merits of their claims that the 2025 ICE guidance was arbitrary and capricious under the APA, and violates class members' due process rights under the Fifth Amendment. *Id.* at 73 ("By definition, VAWA self-petitioners, and U visa and T visa petitioners are victims— of abuse, of crime, or both. Congress intended for such persons to rely on the offered protections so that they would come forward to seek protection from abuse and assist law enforcement. By Plaintiffs' estimate, around 600,000 persons have pending VAWA self-petitions and U visa and T visa petitions, many of whom came forward based on the Congressional promise of eligibility for protection from deportation.") As a result, ICE may not deport Pending Petition Class members.

56. Here, Petitioner is a class member of the Pending Petition Class in *ICWC* because he has filed his application for a U-Visa on April 30, 2026, including a signed LEC Certification or "I-918 Supplement B Certification" on November 9, 2025. Since his application has been formerly received by USCIS, he is for all purposes a class member of *ICWC v. NOEM.* Accordingly, circumstances have changed for Petitioner that merit immediate release and prevent deportation.

57. Additionally, Petitioner is a class member of the Pending Petition Class in *ICWC v. NOEM* not only by having a pending U-Visa, but also if Petitioner files an emergency stay of removal as a U-Visa petitioner given that he has a final order of removal. Given the exigent circumstances, Petitioner intends on filing an emergency stay of removal as well.

58. Thus, Petitioner's continued detention violates due process, and immediate release is required by law.

## CLAIMS FOR RELIEF

### COUNT ONE

***Violation of 8 C.F.R. § 287.8(c)(2)(ii):***

***Warrantless Arrests Without Probable Cause of Flight Risk***

1. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

2. Respondents ICE arrested Petitioner without a warrant and without "reason to believe" that he was "likely to escape before a warrant can be obtained" in violation of 8 C.F.R. § 287.8(c)(2)(ii). The reason to believe standard meets the probable cause standard of the Fourth Amendment. *Perez Cruz v. Barr*, 926 F.3d 1128, 1137 (9th Cir. 2019).

3. Arrest in violation of the regulation is unlawful. *See Sanchez v. Sessions*, 904 F.3d 643, 650 (9th Cir. 2018); *Perez Cruz v. Barr*, 926 F.3d 1128, 1137 (9th Cir. 2019).

### COUNT TWO

***Fourth Amendment: Arrests Without Probable Cause***

4. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

5. The Fourth Amendment prohibits Respondents from conducting or arresting an individual for an immigration violation without probable cause. Respondents ICE arrested Petitioners without probable cause that any of them was a noncitizen unlawfully in the United States.

### COUNT THREE

***Violation of Fifth Amendment Right to Due Process***

6. Petitioner re-alleges and incorporates herein by reference, as is set forth fully herein, the allegations in all the preceding paragraphs.

7. The Due Process Clause of the Fifth Amendment forbids the government from depriving any "person" of liberty "without due process of law." U.S. Const. amend. V. Petitioner has a vested interest in his lawful conditional release. Due Process does not permit the government

to strip him of that liberty without a hearing before this Court. *See Morrissey*, 408 U.S. at 487-488. The Court must therefore order immediate release from Respondents' current unlawful custody and place him in a position *before* his detention on August 24, 2026.

8. Prior to any re-arrest, the government must provide him with a hearing before a neutral adjudicator. At the hearing, the neutral adjudicator would evaluate, *inter alia,* whether clear and convincing evidence demonstrates, taking into consideration alternatives to detention, that he is danger to the community or a flight risk, such that his reincarceration is warranted. During any custody determination hearing that occurs, this Court or, alternatively, a neutral adjudicator must consider alternatives to detention when determining whether Petitioner's re-incarceration is warranted.

**COUNT FOUR**

***Violation of the Administrative Procedure Act***

9. Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Petition as if fully set forth herein.

10. The Administrative Procedure Act prohibits federal action that is "in excess of statutory jurisdiction, authority or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C), and "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," *id.* § 706(2)(A).

11. The government's policy of "warrantless arrests" is arbitrary and capricious, in violation of 5 U.S.C. § 706(2)(A). The government's arbitrary quota-driven arrest policy is therefore in excess of its statutory authority in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(C). The government has provided no reasoned or adequate explanation for the policy, which is a dramatic shift from recent and longstanding agency policy and practice.

12. Petitioner's arrest and re-detention without cause, notice, or any lawful basis on August 24, 2026, without any hearing at which no evidence of flight risk or threat to others was submitted is pursuant to the government's quota driven policy targeting law abiding people for arbitrary detention and deportation is a final agency action that violates the Administrative Procedure Act. *See* 5 U.S.C. § 706(2).

**COUNT FIVE**

***Violation of the APA 5 U.S.C. § 706(2)(A)***

***Petitioner's Detention Is Not in Accordance with Law because It Violates the ICWC PI ORDER***

13. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

14. Under the APA, courts "shall . . . hold unlawful and set aside agency action . . .found to be . . .not in accordance with law." 5 U.S.C. § 706(2)(A).

15. Respondent's detention of Petitioner constitutes final agency action under the APA. 5 U.S.C. §§ 551(c)(10) & (13), 704; *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

16. In *ICWC,* the court concluded that plaintiffs were likely to succeed on their claim and that any prevention of adjudication of pending U-Visa petitions before removal is arbitrary and capricious and not in accordance with law under the APA. *ICWC* PI Order at *73.

17. As a result, the court stayed the three classes as they relate to victims of U-Visas, T-Visas, and VAWA. The stay applies in favor to members of the Pending Petition Class, which includes Petitioner. *Id.*

18. Accordingly, Respondents' detention of Petitioner is not in accordance with law in violation of the APA, as it directly contravenes the § 705 relief issued in the *ICWC* PI Order.

**PRAYER FOR RELIEF**

Wherefore, Petitioner respectfully requests this Court to grant the following:

(1) Assume jurisdiction over this matter;

(2) Declare that Respondents' August 24, 2026 apprehension and detention of Petitioner, FRANCISCO JAVIER RODRIGUEZ SANABIA was an unlawful exercise of authority because the ICE officers failed to provide any notice or any pre-deprivation hearing finding that he presents a danger to the community or is flight risk before his warrantless arrest.

(3) Order ICE to immediately release Petitioner, FRANCISCO JAVIER RODRIGUEZ

SANABIA from his unlawful and mandatory detention and place him in the same position he was *before* he was arrested on August 24, 2026 (No ICE or ISAP registration);

(4) Enjoin re-arresting unless and until a hearing can be held before a neutral adjudicator to determine whether his re-incarceration would be lawful because the government has not shown that he is a danger or a flight risk by clear and convincing evidence;

(5) Order ICE to not transfer to another detention center out of this District;

(6) Order ICE to return all possessions to Petitioner;

(7) Order ICE not to place Petitioner on any GPS/electronic monitoring devices upon immediate release from ICE custody, because it is constructive custody. *Orellana Juarez v. Moniz*, 788 F. Supp. 61, 68 (D. Mass 2025) (finding habeas petitioner subject to 24/7 GPS device on his ankle "remains in custody in violation of the Due Process Clause of the Fifth Amendment").

(8) Award reasonable costs and attorney fees; and

(9) Grant such further relief as the Court deems just and proper.

Dated: August 30th, 2026

Respectfully submitted,

Christine Brito, Esq. (CA Bar. No.316536)
Law Office of Christine Brito
3419 E. Chapman Ave. #355
Orange, CA 92869
(714)912-5026
Christineb@britoesq.com
*Attorney for Petitioner*
*Francisco Javier Rodriguez Sanabia*

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I represent Petitioner, *Francisco Javier Rodriguez Sanabia*, and submit this verification on his behalf. I have discussed with the Petitioner the events described in the Petition. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

//

Executed on August 30th, 2026, in Orange, CA.

Respectfully submitted,

______________________________

Christine Brito, Esq. (CA Bar. No.316536)
Law Office of Christine Brito
3419 E. Chapman Ave. #355
Orange, CA 92869
(714)912-5026
Christineb@britoesq.com
*Attorney for Petitioner*
Francisco Javier Rodriguez Sanabia

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 30, 2026, I served a copy of this Petition for Writ of Habeas Corpus by email to the following individual:

U.S. Attorney Daniel Beck
Acting Civil Division Chief
United States Attorney's Office
Central District of California
300 N. Los Angeles Street, Suite 7516
Los Angeles, CA 90012
(213) 894-2574
daniel.beck@usdoj.gov.

Respectfully submitted,

Christine Brito, Esq. (CA Bar. No.316536)
Law Office of Christine Brito
3419 E. Chapman Ave. #355
Orange, CA 92869
(714)912-5026
Christineb@britoesq.com
*Attorney for Petitioner*
*Francisco Javier Rodriguez Sanabia*

On August 30, 2026, I notified Daniel Beck of the U.S. Attorney's Office of my intent to file.

Respectfully submitted,

Christine Brito, Esq. (CA Bar. No.316536)
Law Office of Christine Brito
3419 E. Chapman Ave. #355
Orange, CA 92869
(714)912-5026
Christineb@britoesq.com
*Attorney for Petitioner*
*Francisco Javier Rodriguez Sanabia*